UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANGELO XIDIAS and ROULA XIDIAS, | |
| Plaintiffs, | |
| v. | CAUSE NO.: 2:21-CV-354-TLS |
| UNITED STATES OF AMERICA and GAYLE FARRINGTON, | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Allow Additional Damages Exceeding Their Administrative Claim [ECF No. 76] and Defendant United States of America's Motion to Strike Dr. Gupta's Affidavit [ECF No. 84]. For the reasons set forth below, the Court denies the United States' motion to strike and denies without prejudice the Plaintiffs' motion to allow additional damages, deferring a ruling on the question until the conclusion of the trial.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 11, 2019, Plaintiffs Angelo Xidias and Roula Xidias were struck by a postal vehicle driven by Linda Evans, a U.S. Postal Service (USPS) employee. Pl. Ex. 1, ECF No. 77, p. 10 of 110. The Plaintiffs were taken by ambulance to the hospital where they received emergency medical treatment. *Id.* at 12. They were subsequently admitted to the hospital for treatment. *Id.* at 12, 58, 72.

On January 20, 2020, the Plaintiffs, by counsel, submitted a letter to Trina Webb, Tort Claim Coordinator for the USPS, informing her of the accident and that both Plaintiffs were still in treatment. Pl. Ex. 1, ECF No. 77, p. 9 of 110. The Plaintiffs also submitted a Standard Form-95 ("SF-95") administrative claim form. *Id.* at 10–24.

On July 9, 2020, the Plaintiffs updated their damages claim and submitted an amended SF-95. Pl. Ex. 2, ECF No. 77, p. 25–70. Due to the impact of the COVID-19 pandemic, their

consultations and treatments had been delayed, but they were both back in treatment. *Id.* at 25. They explained that Roula "continues to have low back pain with radiating numbness into both of her legs, bilateral shoulder pain, headaches, sleep interruption and signs of PTSD (repeated reliving of the accident during wakeful hours and recurrent nightmares). She remains fearful of being in a vehicle." *Id.* After being cleared by insurance, Roula was scheduled for an MRI for July 22, 2020. *Id.* Both Roula and Angelo were being treated by neurologist Dr. Shaila Gupta. *Id.* Angelo had returned to physical therapy and "continue[d] to suffer low back pain with numbness radiating primarily to his right leg, right arm pain, injury bilaterally to both hands with numbness and pain along with general head pain accompanied by headaches." *Id.* at 25–26. A spreadsheet contained known medical expenses for both Plaintiffs. *Id.* at pp. 25–26. The Plaintiffs calculated their lost wages and indicated that lost wages would continue to accrue as neither had been released to return to work. *Id.* at 26. The total damages, including the total loss of their vehicle, was calculated at $87,857.24. *Id*. Additional medical bills were expected because they were continuing to be treated under their doctor's supervision. *Id.*

On January 18, 2021, the Plaintiffs submitted their final administrative claim. Pl. Ex. 3, ECF No. 77, p. 71 of 110. They remained under the care of Dr. Gupta and were still in treatment. *Id.* Roula "continue[d] to have low back pain with radiating numbness into both of her legs, bilateral shoulder pain, headaches, sleep interruption and signs of PTSD (repeated reliving of the accident during wakeful hours and recurrent nightmares)." *Id.* Roula "remain[ed] fearful of being in a vehicle." *Id.* She had completed a course of physical therapy "with equivocal results." *Id.* Testing indicated L5 involvement and structural damage primarily in her lower back. *Id.* at 71–72. "Her symptoms continue[d] to include tingling and burning sensation along with pain bilaterally in the legs." *Id.* at 72. "Angelo attended the recommended course of physical therapy, but his pain, discomfort and lack of mobility continue[d]." *Id.* He "continue[d] to suffer low back pain with numbness radiating primarily to his right leg, right arm pain, injury bilaterally to both hands with numbness and pain along with general head pain accompanied by headaches." *Id.* Up-to-date billing was still being sought. *Id.* Angelo "continue[d] to be off work due to his

complains of pain, discomfort, and lack of mobility," Roula was still off work, neither had been released to work, and the "lost wages [would] continue to accrue until such time as they are physically able to return to their jobs." *Id.* The final claim for Angelo was $131,450.50, comprised of $27,192.58 for known medical bills, $70,774.00 for lost wages, $8,483.92 for property damages, and $25,000.00 for future projected medical bills. *Id.* The final claim for Roula was $65,732.60, comprised of $20,989.60 for known medical bills, $19,743.00 for lost wages, and $25,000.00 for future projected medical bills. *Id.* at 73. They continued to receive treatment and stated that additional medical bills would be forthcoming. *Id.*

On February 25, 2021, the Plaintiffs provided records in response to a January 26, 2021 request from the claims adjuster. Pl. Ex. 5, ECF No. 77, p. 92 of 110. They explained that they were still obtaining additional medical and billing records and would be supplementing damage totals upon receipt of the records. *Id.* However, no more supplements were submitted.

On November 10, 2021, the Plaintiffs filed their Complaint [ECF No. 1] in this Court pursuant to the Federal Tort Claims Act (FTCA) against Defendants the United States and Linda Evans. The Plaintiffs alleged permanent bodily and psychological injuries, past and future pain and suffering, past and future medical and psychological attention and care, past and future loss of earnings and/or impairment of earning capacity or earning power, other financial and pecuniary expenses, and a loss of consortium. Compl. ¶¶ 11–15, 18–19.

On December 9, 2021, the USPS denied the Plaintiffs' January 18, 2021 final administrative claim for "failure to submit competent evidence of damages as is required." Pl. Ex. 4, ECF No. 77, p. 90 of 110.

On February 1, 2022, the Plaintiffs filed an Amended Complaint [ECF No. 30], dropping Linda Evans as a party defendant. On January 4, 2023, the Plaintiffs filed a Second Amended Complaint [ECF No. 56] to add the allegations against the newly added Intervenor Defendant Gayle Farrington, who was driving a vehicle that collided with the Plaintiffs' vehicle after they were struck by the USPS vehicle.

Defendant United States noticed the deposition of the Plaintiffs' treating neurologist, Dr. Gupta, for May 24, 2023; however, Dr. Gupta raised concerns about payment. Def. Exs. E, F, ECF Nos. 85-5, 85-6. Rather than pursue Dr. Gupta's deposition, the United States proposed private mediation, and the Plaintiffs agreed. *See* Def. Exs. E, F. The discovery deadline was July 6, 2023, and the dispositive motion deadline was September 11, 2023. ECF Nos. 62, 65. On November 28, 2023, the mediator reported that mediation was unsuccessful. ECF No. 69.

On January 16, 2024, the Plaintiffs filed the instant Motion to Allow Additional Damages Exceeding Their Administrative Claim. ECF No. 76. In support, they each submitted an affidavit. *See* Pl. Exs. 6, 7, ECF No. 77, pp. 101, 106 of 110.

In his affidavit, Angelo states that, a year after the accident, he thought he was improving and would be able to return to the manager job at Main Muffler, which he had held for over thirty years, and then retire in 2026 as planned. Pl. Ex. 6, ¶¶ 5, 8. However, early in the fall of 2021, he realized that, despite following his treatment regimen, he had increased pain as well as worse emotional problems with a heightened fear of driving. *Id.* ¶ 9. In 2022, he started going to Clarity Clinic to address his mental health issues and fear of driving but was not successful. *Id.* ¶ 10. As a result of his physical and mental injuries, he was terminated from his job at the end of June 2022, although he had been allowed to work remotely from July 2021 through his termination date. *Id.* He continues to have pain in the original areas of his body after the accident and has radiating pain in his lower back into his legs that has worsened to the point where he has difficulty lifting things. *Id.* ¶ 11. He states that, because of his injuries, he was no longer able to maintain two rental houses and had to sell them. *Id.* ¶ 12. He describes the effect of his worsening physical pain and accompanying emotional damage on his marriage. *Id.* ¶ 13. He states that healthcare providers said his "conditions are now chronic and permanent such that [he] will have pain and problems for the rest of [his] life." *Id.* ¶ 14.

In her affidavit, Roula details her physical injuries from the collision and indicates initial problems getting treatment because of her insurance company. Pl. Ex. 7, ¶¶ 6–7. She remained positive that her injuries would improve and believed that they were improving, but in the fall of

4

2021, she noticed increasing pain levels and worsening physical functioning as well as significantly worse and new emotional distress. *Id.* ¶¶ 8, 12. In-person psychotherapy was unsuccessful. *Id.* ¶ 12. Initially, her employer had allowed her to work remotely after the accident and she expected to be able physically and mentally to return to work in the fall of 2021. *Id.* ¶ 9. However, her anxiety, worry, and fear levels "increased dramatically well beyond the initial PTSD diagnosis." *Id.* ¶ 10. Because she could not return to in-person work, her employment of over three decades was terminated on June 30, 2022. *Id.* ¶¶ 11, 17. She was essentially homebound because of her fear of travel. *Id.* ¶ 13. Her ability to continue psychological treatment was restricted as she was paying out-of-pocket on a fixed income. *Id.* ¶ 14. Her physical and emotional injuries impacted her marriage. *Id.* ¶ 15. Health care providers said her "conditions are chronic and permanent and that [she] will have pain and emotional distress for the rest of her life." *Id.* ¶ 16. Both Angelo and Roula stated generally that they faced delays in getting timely care because of the COVID-19 pandemic. *Id.* ¶ 7; Pl. Ex. 6, ¶ 7.

The United States filed a response on February 6, 2024, ECF No. 80, and attached excerpts of the Plaintiffs' depositions regarding their treatment history and inability to return to work, Def. Exs. A, B, ECF Nos. 80-1, 80-2. On February 23, 2024, the Plaintiffs filed a reply, ECF No. 83, attaching excerpts from their depositions, Reply Exs. 2, 3, ECF No. 83, p. 17, 32 of 45, and an affidavit from Dr. Gupta, Pl. Reply Ex. 1, ECF No. 83, p. 14 of 45.

In her affidavit, Dr. Gupta states that she treated Roula with conservative management throughout 2020 and 2021 and into 2022, during which time Roula's subjective complaints showed improvement. Pl. Reply Ex. 1, ¶ 3. However, in 2022, because Roula complained of new, significantly worsening pain in the same areas and demonstrated physical limitations on objective testing, Dr. Gupta "diagnosed her as having developed chronic pain syndrome ('CPS')." *Id.* ¶ 4. Despite Dr. Gupta tailoring the Plaintiff's treatment to this worsened pain, "her subjective complaints of pain, discomfort and loss of function have worsened and she continues to lack improvement." *Id.* ¶ 7. As for Angelo, Dr. Gupta stated that his complaints of pain remained steady throughout 2020 and 2021 but that in 2022 he "reported a significant change to

his well-being including heightened complaints of acute right-sided low back pain with numbness to a degree which he had never exhibited before." *Id.* ¶ 11. Based on the extent of his treatment and compliance with that treatment along with his new heightened pain complaints, Dr. Gupta believed in 2022 that "Angelo's new complaints demonstrated the onset of CPS." *Id.* ¶ 12. She added that "[n]either Roula or Angelo had CPS prior to 2022." *Id.* at 2.

On March 13, 2024, the United States filed the instant Motion to Strike Dr. Gupta's Affidavit as an untimely disclosed expert witness. ECF No. 84. The Plaintiffs filed a response on April 8, 2024, and the United States filed a reply on April 15, 2024. ECF Nos. 88, 90.

## ANALYSIS

The question before Court is whether the Plaintiffs have shown "newly discovered evidence" or "intervening facts" within the meaning of 28 U.S.C. § 2675(b) to allow an increase in the damages requested in their administrative claim under the Federal Tort Claims Act (FTCA).

The FTCA is "a limited waiver of sovereign immunity for the United States" that "renders the federal government liable in tort as a private individual would be under like circumstances." *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1296–97 (7th Cir. 1991) (citing 28 U.S.C. §§ 1346(b), 2671–2680). A plaintiff must first submit the claim to the appropriate federal agency for a "sum certain" and be denied compensation before filing a lawsuit under the FTCA. *Chronis v. United States*, 932 F.3d 544, 546–47 (7th Cir. 2019) (quoting 28 C.F.R. § 14.2(a); citing *Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997)); *see* 28 C.F.R. §§ 14.2(a), (b); *Zurba v. United States*, 318 F.3d 736, 738 (7th Cir. 2003). A claimant may amend the administrative claim, including the sum certain, any time before the agency's denial of the claim or before filing a civil action. 28 C.F.R. § 14.2(c).

This "sum certain" caps the damages in the federal court action unless the plaintiff meets one of two exceptions set forth in the statute:

> Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is

6

> based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

28 U.S.C. § 2675(b). Thus, the two bases for an increase in the sum certain requested in the administrative claim are (1) "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency" or (2) "proof of intervening facts, relating to the amount of the claim." *Zurba*, 318 F.3d at 739 (quoting 28 U.S.C. § 2675(b)). The plaintiff has the burden to demonstrate at least one of the exceptions. *Id.* (citation omitted). Courts apply an objective standard to determine whether an exception is met. *See Michels v. United States*, 31 F.3d 686, 689 (8th Cir. 1994); *Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

"An unforeseen worsening of a known injury may constitute 'newly discovered evidence' or 'intervening facts' under § 2675(b) . . . ." *Zurba*, 318 F.3d at 739 (citing *Michels*, 31 F.3d at 688); *see Michels*, 31 F.3d at 688 ("[A] known injury can worsen in ways not reasonably discoverable by the claimant or his or her treating physician, [which,] . . . if convincingly proved, can warrant § 2675(b) relief.'"). However, "new information cannot surmount the bar created by § 2675(b) if the information merely concerns the precision with which the nature, extent, or duration of a claimant's condition can be known." *Zurba*, 318 F.3d at 740 (quoting *Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002)); *see also id.* (quoting *Reilly v. United States*, 863 F.2d 149, 171 (1st Cir. 1988) ("Intelligence which serves only to bear out earlier suspicions cannot unlock FTCA's narrow escape hatch. . . . Diagnoses which are no more than cumulative and confirmatory of earlier diagnoses are neither 'newly discovered evidence' nor 'intervening facts' for the purposes of § 2675(b).")). Rather, information can meet the standard "if it sheds new light on the basic severity of the claimant's condition—that is, if it *materially differs* from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed." *Id.* at 741 (quoting *Lebron*, 279 F.3d at 330).

Here, the Plaintiffs request an increase in the damages amount of their January 18, 2021 final administrative claim, which was $131,450.50 for Angelo and $65,732.60 for Roula. They

contend that, in the fall of 2021, their conditions began to change dramatically to the point where they developed chronic pain with no improvement such that they were unable to return to work as expected, they were unexpectedly forced to sell their two rental properties as Angelo was no longer able to maintain and repair them, they shunned their former social life for fear of driving, and they experienced a loss of consortium. They contend that their chronic pain and failure to improve constitutes "newly discovered evidence" or "intervening facts" under § 2675(b).

In support of their opening brief, the Plaintiffs submitted their own affidavits detailing their worsening physical and mental health and the resulting effect on their lives. In response, the United States argued that the Plaintiffs' own affidavits were not admissible medical opinions or evidence supporting their allegations and that, even if the Court considered their affidavits, the Plaintiffs had not shown that the alleged worsening of their conditions later in 2021 was unforeseeable rather than a miscalculation at the time of their January 2021 administrative claim. In reply, the Plaintiffs submitted the affidavit of their treating neurologist Dr. Gupta, who states that, in 2022, she diagnosed Roula for the first time with chronic pain syndrome and believed that Angelo demonstrated the onset of chronic pain syndrome because both demonstrated significantly worse pain not previously exhibited and were not responsive to treatment. The United States then filed a Motion to Strike Dr. Gupta's affidavit, which the Court considers before turning to the merits of the Plaintiff's Motion to Allow Additional Damages.

**A.  Motion to Strike Dr. Gupta's Affidavit**

The United States asks the Court to strike Dr. Gupta's affidavit as an untimely disclosure of an expert opinion made either as a non-retained expert under Federal Rule of Civil Procedure 26(a)(2)(C) or as a retained expert under Rule 26(a)(2)(B) based on the diagnoses of chronic pain syndrome not mentioned in her treatment records. The Court denies the motion because Dr. Gupta's affidavit contains statements of fact made by a treating physician as a fact witness and does not contain expert opinions subject to either Rule 26(a)(2)(B) or (a)(2)(C).

Federal Rule of Civil Procedure 26(a)(2)(A) requires disclosure of all experts: "[A] party must disclose to the other parties the identity of any witness it may use at trial to present

evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Expert disclosures must be made by the deadlines set by the court. Fed. R. Civ. P. 26(a)(2)(D). If a disclosed expert witness "is one retained or specially employed to provide expert testimony in the case," the party must provide a written report in compliance with Rule 26(a)(2)(B). For non-retained experts, the party must provide a disclosure that states "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

However, a treating physician can act as both a fact witness and an expert witness. The 2010 Advisory Committee Notes to the newly added 26(a)(2)(C) identifies "physicians or other health care professionals" as examples of individuals who "may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment. "Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C)"; however, "[t]he (a)(2)(C) disclosure obligation *does not* include facts unrelated to the expert opinions the witness will present." *Id.* (emphasis added). Thus, a treating physician acts as a fact witness when testifying as to the treating physician's observations, diagnoses, and treatment for which no Rule 26(a)(2)(C) disclosures are required. *See Mahler v. Vitamin Shoppe Indus., Inc.*, No. 19-CV-3848, 2023 WL 6141369, at *5 (N.D. Ill. Sept. 20, 2023) (limiting treating neurologist to testimony about her observations, diagnoses, and treatment and excluding her expert testimony on causation because the plaintiff did not provide the proper expert disclosures under Rule 26(a)(2)(C)); *Rivera v. Aerovias de Mexico, S.A. de C.V.*, 690 F. Supp. 3d 906, 909–10 (N.D. Ill. 2023) ("Treating physicians may testify as fact witnesses about their personal observations, the diagnoses they made, Plaintiff's history, and the treatments they provided." (citing *Levingston v. Myles*, No. 17 C 5947, 2022 WL 952279, at *4 (N.D. Ill. Mar. 30, 2022))); *Johnson v. Norfolk S. Ry. Co*, No. 3:12-CV-102, 2015 WL 3738545, at *3 (N.D. Ind. June 15, 2015) ("Treating physicians, if disclosed as fact witnesses, may testify only regarding personal

observations, examinations, and diagnoses completed during the course of treatment and contained within the relevant medical records." (citing *Moriconi v. Koester*, No. 11-CV-3022, 2015 WL 328590, at *1 (C.D. Ill. Jan. 26, 2015)))). But when the treating physician acts as an expert, for example by offering an opinion on causation, Rule 26(a)(2)(C) disclosures are required. *See Mahler*, 2023 WL 6141369, at *5; *Levingston*, 2022 WL 952279, at *4 ("Treating physicians may properly testify about their observations, diagnoses, and treatments without filing an expert report. However, treating physicians may not opine about causation without being properly qualified as experts." (cleaned up)).

In September 2022, the Plaintiffs served "expert witness disclosures" by the Court's deadline. *See* Def. Mot. to Strike Ex. A, ECF No. 85-1; ECF No. 32. The Plaintiffs listed twenty-four "treating physicians and other health care professionals," including Dr. Gupta, "who will testify in an expert capacity based on their respective education, training, and experience in the medical arts field in which each such person is associated." Def. Mot. to Strike Ex. A. The disclosure did not provide the additional information required under Rule 26(a)(2)(C), *see id.*, and the Plaintiffs did not provide an expert report for Dr. Gupta under Rule 26(a)(2)(B).

First, the United States argues that the Plaintiffs did not properly disclose Dr. Gupta as a non-retained expert witness under Rule 26(a)(2)(C) because the Plaintiffs' disclosure did not include the subject matter of Dr. Gupta's expert testimony or summarize any facts or opinions to which she would testify. *See* Fed. R. Civ. P. 26(a)(2)(C)(i), (ii). However, Dr. Gupta's affidavit contains only factual statements made as a treating physician based on her observations, treatment, and diagnosis of the Plaintiffs, including the 2022 diagnoses of chronic pain syndrome. The affidavit does not offer expert opinions, such as on causation, outside the facts of her treatment of the Plaintiffs. Thus, expert witness disclosures under Rule 26(a)(2)(C) were not required for the factual statements in Dr. Gupta's affidavit. *See Mahler*, 2023 WL 6141369, at *5 (noting that the defendant acknowledged that the plaintiff may offer the treating physician "as a *fact* witness to testify about 'her observation, diagnoses, and treatment' but maintain[ed] that she may not offer expert opinions regarding causation").

10

Second, the United States reasons that Dr. Gupta's diagnoses of chronic pain syndrome, which the United States represents is not in her subpoenaed medical records, was developed for litigation, making the purpose and substance of the affidavit exclusively within the purview of a retained expert subject to Rule 26(a)(2)(B). Although Dr. Gupta's affidavit is offered for purposes of litigation, the facts as presented in the affidavit are about Dr. Gupta's observations, treatment, and diagnosis of the Plaintiffs in 2022 as their treating physician. Thus, on the evidence before the Court, Dr. Gupta was not a retained expert for purposes of Rule 26(a)(2)(B).

Therefore, the factual testimony in Dr. Gupta's affidavit is not an undisclosed expert opinion under either Rule 26(a)(2)(B) or (a)(2)(C), and the Court denies the Motion to Strike.

**B.    Motion to Allow Additional Damages Under § 2675(b)**

Seeking an increase in the "sum certain" requested in their January 18, 2021 final administrative claim, the Plaintiffs contend that in the fall of 2021 they each experienced an unforeseen worsening of their known injuries, which constitutes "newly discovered evidence" or "intervening facts" for purposes § 2675(b). In support of their opening brief, the Plaintiffs offered only their own affidavits (detailed in the background above) describing the worsening symptoms of their now-chronic conditions, and the negative effect of those symptoms on their ability to work, Angelo's ability to maintain their rental properties, their mental health, and their marriage. Pl. Exs. 6, 7, ECF No. 77, pp. 101–110 of 110. The Plaintiffs calculate the lost wages unknown at the time of the final administrative claim as $531,232 for Angelo and $147,572 for Roula. Pl. Br. 7, ECF No. 77.

The United States opposed the motion, arguing that the Plaintiffs provided no admissible evidence showing an exception under § 2675(b) and that the Plaintiffs had sufficient information at the time of their January 2021 final administrative claims to account for the "reasonable worst-case scenario" related to past and future medical and economic damages based on their known injuries. *See Zurba*, 318 F.3d at 741. In reply, the Plaintiffs offered the affidavit of their treating neurologist, Dr. Gupta, averring that she had newly diagnosed Roula with chronic pain syndrome

11

in 2022 and believed in 2022 that Angelo demonstrated the onset of chronic pain syndrome. For the reasons below, the Court defers ruling on this question until the conclusion of the trial.

In *Zurba*, the Seventh Circuit Court of Appeals found that substantial evidence showed a significant worsening of the plaintiff's fears and anxieties since filing her administrative claim and this "unforeseen worsening of a known injury may constitute 'newly discovered evidence' or 'intervening facts.'" *Zurba*, 318 F.3d at 739 (citing *Michels*, 31 F.3d at 688). The court found that the worsening of the plaintiff's condition materially differed from the worst-case prognosis of which she could have known when she filed her claim. *Id.* at 741. In *Michels*, relied on by the court in *Zurba*, the plaintiff suffered hip and leg injuries from a motorcycle accident but later developed arthritis and necrosis after filing his administrative claim. 31 F.3d at 687. Even though the plaintiff knew that arthritis and necrosis were possible because of his injuries, he did not show signs of either at the time of filing his administrative claim and thus did not factor them into his claim. *Id.* The Eighth Circuit Court of Appeals allowed an increase in damages for those conditions because "a known injury can worsen in ways not reasonably discoverable by the claimant or his or her treating physician, and . . . such 'newly discovered evidence' or 'intervening facts,' if convincingly proved, can warrant § 2675(b) relief.'" *Id.* at 688.

The United States argues that Dr. Gupta's diagnosis of chronic pain syndrome is not "newly discovered evidence" or "intervening facts" because the Plaintiffs knew of and accounted for their chronic pain in their final administrative claim. Indeed, the letter accompanying the Plaintiffs' January 2021 final administrative claim stated that they remained under the care and treatment of their health care providers and were both still in treatment. The letter also stated that Angelo "continues to be off work due to his complaints of pain, discomfort, and lack of mobility" and that Roula's physical therapy had "equivocal results" and her "symptoms continue[d] to include tingling and burning sensation along with pain bilaterally in the legs," *id.* at 72. Nevertheless, it appears from Dr. Gupta's affidavit that chronic pain syndrome was an entirely new diagnosis in 2022 based on an unforeseen worsening of their symptoms. Thus, consistent with the holdings in *Zurba* and *Michels*, it appears that the diagnosis of chronic pain

12

syndrome may not have been reasonably discoverable at the time of the January 2021 administrative claim and appears to be proof of newly discovered evidence or intervening facts.

Yet the Plaintiffs did not reference Dr. Gupta's diagnosis of chronic pain syndrome in their opening brief in support of the Motion to Allow Damages, although they do state generally that their conditions had become chronic. And counsel for the United States represents in the Motion to Strike that there is no diagnosis of chronic pain syndrome by Dr. Gupta in the Plaintiffs' medical records, based on counsel's review of the records produced pursuant to subpoena in February 2023. Def. Mem. 5, ECF No. 85. Notably, the Plaintiffs did not address this assertion in their response to the Motion to Strike.[1] Moreover, the Plaintiffs have not submitted any medical records in support of their Motion to Allow Additional Damages to demonstrate their worsening symptoms in 2021 and 2022 or Dr. Gupta's diagnosis of chronic pain syndrome.[2] In addition, as argued by the United States, despite the Plaintiffs' assertion that they knew their conditions were worsening in the fall of 2021, the Plaintiffs did not amend their January 2021 administrative claim prior to filing this lawsuit in November 2021 to add further lost wages, additional medical bills, or damages from a loss of consortium based on the known worst-case scenario. On the other hand, the Plaintiffs state in their affidavits that they were not aware of the permanency of their worsened conditions until sometime in 2022.

Finally, as for the Plaintiffs' suggestion that the COVID-19 pandemic affected their timely access to medical and psychological care to arrive at definitive diagnoses, they have cited no evidence to show the pandemic impacted their ability to accurately identify their current and

---

[1] The Plaintiffs argue that the United States has unfairly used its Motion to Strike as a sur-response. The Court disagrees. The Plaintiffs did not submit Dr. Gupta's affidavit until their reply brief. As a result, the United States did not have an opportunity to address the merits of the affidavit. Had the United States requested leave to file a sur-response to address Dr. Gupta's affidavit, the Court would have granted the request. In their response to the Motion to Strike, the Plaintiffs had an opportunity to respond—and did respond—to the United States' arguments, except as to the assertion that there is no reference to chronic pain syndrome in Dr. Gupta's records.

[2] The Plaintiffs intentionally filed with the Court only the first nine pages of the 450 pages of records submitted to the claim investigator in February 2021, *see* Pl. Br. 3, ECF No. 77; however, those nine pages contain only the November 11, 2019 accident report. *See* Pl. Ex. 5, ECF No. 77 pp. 92–100 of 110.

anticipated damages either in January 2021 or before filing the November 2021 complaint. It appears that the only reference to the COVID-19 pandemic in their administrative claims is the July 9, 2020 SF-95 form stating that the COVID-19 pandemic delayed their consultations and treatments but that they were both back in treatment. Pl. Ex. 2, ECF No. 77 p. 25 of 110.

Thus, Dr. Gupta's new diagnosis of chronic pain syndrome in 2022 suggests that the Plaintiffs may be able to show newly discovered evidence or intervening facts to increase the amount of damages above the sum certain stated in their administrative claim. However, on the current record, the Court cannot determine whether the Plaintiffs' chronic pain and the resulting effects in 2022 was the worst-case prognosis known at the time of filing the administrative claim in January 2021 or sometime before filing this lawsuit in November 2021 or whether the severity of their conditions in 2022 materially differs from that known worst-case prognosis. *See Zurba*, 318 F.3d at 741. *Compare Sims v. United States*, No. 20 C 3993, 2023 WL 2746001, at *8 (N.D. Ill. Mar. 3, 2023) (finding that the plaintiff's miscalculation as to the permanency of dumping syndrome did not trigger a § 2675(b) exception), *Henriksen v. United States*, No. 09 C 2398, 2011 WL 856657, at *2–3 (N.D. Ill. Mar. 9, 2011) (finding that the medical evidence submitted "cuts against Plaintiffs' contention that they could not have foreseen Kurt's prognosis regarding the permanence of his injuries" and "[a]t best, . . . 'serves only to bear out earlier suspicions'"), and *Manzanares v. United States*, No. 16 CV 11328, 2019 WL 13492871, at *3 (N.D. Ill. Apr. 19, 2019) (finding that the plaintiffs had not provided evidence that their child's cognitive impairments were worse than originally thought because the parents knew the child was exhibiting cognitive delays, or at least knew that delays were significantly likely, before filing the claim), *with Lilly v. United States*, No. 4:17-CV-10, 2019 WL 9809677, at *3 (S.D. Ind. June 12, 2019) (finding that new evidence of psychological impairments that developed as a result of the accident, supported by the treating physician's testimony, was an "unforeseen worsening of a known injury" rather than "evidence which merely bears on the precision of the victim's prognosis" (quoting *Zurba*, 318 F.3d at 739, 740)).

Therefore, the Court defers ruling on the Plaintiffs' motion until the close of evidence at trial to consider all the medical evidence and testimony regarding the Plaintiff's worsening symptoms and the timing of their knowledge of their conditions. *See Zurba*, 318 F.3d at 738 (noting that the district court had deferred ruling, until the conclusion of trial, on the issue of increasing the amount sought in the administrative claim); *Michels*, 31 F.3d at 687 (same).

## CONCLUSION

Accordingly, the Court hereby DENIES the Defendant's Motion to Strike Dr. Gupta's Affidavit [ECF No. 84] and DENIES without prejudice the Plaintiffs' Motion to Allow Additional Damages Exceeding Their Administrative Claim [ECF No. 76], granting the Plaintiffs leave to renew their motion at the time of trial.

Pursuant to 28 U.S.C. § 636, this case is REFERRED to Magistrate Judge John E. Martin for purposes of holding a settlement conference.

Because the original dispositive motion deadline of September 11, 2023, expired while the parties were pursuing private mediation, the Court SETS the dispositive motion deadline for November 27, 2024; this renewed deadline is not stayed pending settlement negotiations.

SO ORDERED on August 29, 2024.

    s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT